## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CAMPISI CONSTRUCTION, INC., | : | |
| | : | Case No. 14-12458 (JKF) |
| Debtor. | : | |

| | | |
|---|---|---|
| Campisi Construction, Inc. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Pro. No. 14-00616 (JKF) |
| | : | |
| ECI, LLC | : | |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| Cornerstone Consulting Engineers & Architectural, Inc. | : | |
| | : | |
| Defendant. | : | |

### MOTION OF CORNERSTONE CONSULTING ENGINEERS & ARCHITECTURAL, INC. TO ENFORCE AND APPROVE SETTLEMENT AGREEMENT BETWEEN CHAPTER 7 TRUSTEE, ECI, LLC AND CORNERSTONE CONSULTING ENGINEERS & ARCHITECTURAL, INC.

Cornerstone Consulting Engineers & Architectural, Inc. ("Cornerstone"), by and through its undersigned counsel, hereby moves this Court for the entry of an Order, pursuant to Federal Rule of Bankruptcy Procedure 9019 and section 105 of the United States Bankruptcy Code (the "Bankruptcy Code"), enforcing and approving a settlement agreement (the "Settlement Agreement") by and between the Chapter 7 Trustee (the "Trustee"), solely in his capacity of trustee of the bankruptcy estate of Campisi Construction, Inc. ("Campisi Construction" or the "Debtor"), ECI, LLC ("ECI") and Cornerstone.  In support of this Motion, Cornerstone states as follows:

## PRELIMINARY STATEMENT

1.  For over three years, Cornerstone, which is effectively a garnishee in this proceeding, has been trapped in the middle of a protracted and costly dispute among competing claimants.  Prior to the commencement of this bankruptcy case, Cornerstone entered into a settlement agreement resolving state court litigation.  The settlement obligated Cornerstone to make a series of payments over time.  However, a number of parties, including the bankruptcy estate and ECI, a creditor of the Debtor, have asserted that they are entitled to the settlement funds.  Cornerstone is ready and willing to make payments; however, in light of those competing claims and threats of litigation, it cannot do so absent a court order or consensual resolution.[1]

2.  Since 2013, Cornerstone has been subjected to two garnishments on its bank account, including one post-petition, and was forced to defend itself in the Adversary Proceeding.  Following a March, 2016 status conference before the Court, Cornerstone took the laboring oar (at its significant expense) in spearheading settlement negotiations among the parties and documenting the terms of an agreement reached by the parties.  The material terms of the settlement contemplated payment of an agreed-upon sum to the Trustee and relinquishment of certain garnished funds to ECI.  Notwithstanding that agreement, ECI has refused to execute the settlement documents and continues to invent new and additional terms or issues in an effort to derail or renegotiate the settlement.

3.  Additionally, in an effort to circumvent the agreement, and in direct violation of this Court's September 9, 2014 Orderand the automatic stay, ECI garnished Cornerstone's bank account in October, 2016 and has threatened to do so again if Cornerstone does not acquiesce to its demands.

---

[1] As will be evident by the facts outlined below, interpleading the settlement funds into Court is not a sufficient solution and will not insulate Cornerstone from continued threats of  litigation.

4.   With the goal of bringing this matter to a conclusion, Cornerstone has filed the instant Motion seeking the enforcement and approval of the settlement.  Accordingly, Cornerstone respectfully requests that the Court enter the attached Order enforcing and approving the settlement and enter the attached Order effectuating that relief.

## JURISDICTION

5.   The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

6.   The statutory predicates for the relief requested herein are section 105 of the Bankruptcy Code and Rules 2002, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

### A.   The Bankruptcy Case

7.   On March 31, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code commencing the above-captioned bankruptcy case (the "Bankruptcy Case").

8.   On June 24, 2015, the Bankruptcy Case was converted to a case under Chapter 7 of the Bankruptcy Code.  The Trustee was appointed as Chapter 7 trustee for the estate on June 25, 2015, which appointment remains in effect.

### B.   State Court Litigation and Settlement Payment

9.   Prior to the Petition Date, on or about December 10, 2002, Cornerstone was incorporated in the Commonwealth of Pennsylvania.  John B. Anderson, Lester M. Stein, Mark W. Metzgar, and Anthony G. Campisi ("Mr. Campisi") were the shareholders of Cornerstone.

3

10.  Cornerstone is in the business of providing architectural and engineering services and promoting construction work to be performed by the Debtor.  Mr. Campisi was a principal of the Debtor.

11.  On January 12, 2006, Mr. Campisi was removed from the Board of Directors of Cornerstone.  On January 1, 2008, Mr. Campisi filed a Petition to Compel Inspection of Corporate Records pursuant to 15 Pa. C.S.A. § 1508(c) in the Court of Common Pleas of Montgomery County (the "State Court"), case number 2008-02053.  The case was terminated on January 7, 2011, pursuant to Pennsylvania Rule of Civil Procedure 230.2.

12.  Prior to the termination of the case, Mr. Campisi filed a civil complaint on or about August 8, 2009, in the State Court, case number 2009-25147 (the "Campisi State Litigation").  In the Campisi State Litigation, Mr. Campisi:  (i) alleged that defendants breached their fiduciary duties to the corporation and Mr. Campisi; and (ii) demanded equitable relief in the form of:  (a) a mandatory accounting by the defendants; (b) the appointment of a receiver *pendente lite*; and (c) the involuntary dissolution of the corporation.

13.  The Campisi State Litigation was resolved by written mutual release and settlement agreement (the "State Litigation Settlement Agreement"), whereby Mr. Campisi, and Campisi Construction, settled and released all potential claims and counterclaims with the defendants.

14.  In consideration of resolution of the claims and counterclaims, the State Litigation Settlement Agreement required Cornerstone and its shareholders to pay $35,000.00 upon the execution of the agreement and an additional $215,000.00, which payments were to be made payable in twenty four (24) equal payments, each due on a quarterly calendar basis (i.e., each three (3) months) commencing May 1, 2012.

4

15.   Subsequent to the execution of the State Litigation Settlement Agreement, Cornerstone and its shareholders commenced the required payments.

**C.    ECI Litigation against the Debtor**

16.   Prior to the commencement of this Bankruptcy Case, ECI commenced litigation against Campisi Construction in Pennsylvania state court (the "ECI State Litigation"). On August 20, 2013, the court entered a final judgment in favor of ECI, and against Campisi Construction, in the amount of $174,047.35, plus $52.71 in daily post-judgment interest (the "ECI Judgment").

17.   During and around the time the ECI Judgment was entered, disputes arose between Mr. Campisi, Campisi Construction, ECI, Cornerstone and Cornerstone's shareholders as to the proper allocation and distribution of the funds being paid pursuant to the State Litigation Settlement Agreement.  Various threatened legal actions were directed to Cornerstone and its shareholders.

18.   ECI commenced efforts to levy and execute on the assets of Mr. Campisi and Campisi Construction to satisfy the ECI Judgment.

19.   In the ECI State Litigation, ECI attempted to garnish the settlement funds owed from Cornerstone and its shareholders under the State Litigation Settlement Agreement. On or about December 23, 2013, ECI obtained a judgment against Cornerstone, ***as a garnishee***, (the "Garnishment Judgment"), in the amount of $161,250.00, while taking other actions to levy and execute upon assets of Cornerstone (collectively, the "ECI Garnishment Efforts").

20.   ECI levied upon a Cornerstone bank account in the amount of $10,826.58 (the "Garnished Funds").  Thereafter, Cornerstone and its shareholders also delivered payments

5

to ECI in the amount of $18,000.00 which payments were to be credited against any amounts

owed under the State Litigation Settlement Agreement and against any garnishee judgment.

21.  In light of objections raised by Mr. Campisi and Campisi Construction to the

payments made to ECI, Cornerstone and its shareholders ceased payments under the State

Litigation Settlement Agreement pending direction from a Court of appropriate jurisdiction,

and/or agreement of the parties, as to proper allocation and distribution of future payments under

the State Litigation Settlement Agreement.

22.  Campisi Construction and ECI caused Cornerstone and its shareholders to

incur great legal expense, costs, and inconvenience, through no fault of Cornerstone or its

shareholders, which expense, costs, and inconvenience increased as a result of Cornerstone being

named as a defendant in the Adversary Proceeding (defined below).

**D.    The Adversary Proceeding**

23.  On or about November 6, 2014, before the case was converted, the Debtor

instituted an adversary proceeding against Cornerstone and ECI under Adv. Pro. No. 14-616 (the

"Adversary Proceeding") asserting claims for breach of the State Litigation Settlement

Agreement and requesting that the payments due under that agreement be accelerated.

24.  On December 12, 2014, Cornerstone filed an Answer in the Adversary

Proceeding asserting, among other things, that Cornerstone was not in violation of the State

Litigation Settlement Agreement and that the ECI Garnishment Efforts were in violation of the

automatic stay arising upon commencement of the Bankruptcy Case.

25.  On March 16, 2016, the parties to the Adversary Proceeding participated in a

status conference before the Court and reported that they would work toward negotiating and

finalizing a consensual resolution.

03/27/2017 SL1 1456780v1 110237.00001

26.  ECI and the Trustee resolved various claims between themselves, including a proper allocation between ECI and the bankruptcy estate of any funds paid pursuant to State Litigation Settlement Agreement.

27.  Following the March 16, 2016 status conference, the parties to the Adversary Proceeding continued their settlement negotiations.  Among the material terms discussed were: (i) the total amount that would be paid by Cornerstone to the Trustee; (ii) the timing of payments; (iii) whether the Garnished Funds should be delivered to ECI; and (iv) expansive release and injunction provisions.  Those negotiations were primarily conducted through counsel to the parties.

28.  On April 1, 2016, counsel for ECI proposed that Cornerstone pay the total sum of $100,000 in full satisfaction of the claims against Cornerstone with such payment being paid in installments of $80,000 and then two subsequent payments of $10,000 each spread over four months after the initial payment.

29.  On April 4, 2016, counsel for Cornerstone contacted ECI's counsel and advised that Cornerstone would agree to ECI's request for a total payment of $100,000.

30.  Thereafter, by email dated April 20, 2016, counsel for Cornerstone circulated draft settlement documents.  A true and correct copy of the April 20, 2016 email is attached hereto, made a part hereof, and marked as Exhibit "A."

31.  By email dated May 2, 2016, counsel for the Trustee indicated that the settlement documents were acceptable to the Trustee.

32.  By email dated May 10, 2016, counsel for ECI indicated that they agreed to the proposed settlement terms and requested clarification as to the treatment of the Garnished Funds.  By follow-up email, counsel for ECI indicated that "the garnishment issue is the last road

7

block here." A true and correct copy of the May 10, 2016 email is attached hereto, made a part

hereof, and marked as Exhibit "B."

33. After some continued negotiations, Cornerstone agreed to release the

Garnished Funds to ECI upon consummation of the settlement. By email dated June 17, 2016,

counsel for ECI reported:

> I just spoke with Dave Spause, who was cc'd on this email, in
> regard to your position set forth this morning. I have also included
> Ed DiDonato on this email.
>
> I am pleased to report that ECI/Dave Spause has authorized me to
> accept settlement of the Cornerstone issue.

A true and correct copy of the June 17, 2016 email is attached hereto, made a part hereof, and

marked as Exhibit "C."

34. Thereafter, by email dated June 21, 2016, counsel for Cornerstone circulated

draft settlement documents. Counsel for the Trustee indicated by email dated June 22, 2016 that

the documents were acceptable. A true and correct copy of the June 22, 2016 email is attached

hereto, made a part hereof, and marked as Exhibit "D."

35. By email dated July 21, 2016, counsel for ECI reported that ECI had two

"minor tweaks that do not change the Agreement" and stated further that "I am pleased to report

that he is agreeable to the settlement terms." A true and correct copy of the July 21, 2016 email

is attached hereto, made a part hereof, and marked as Exhibit "E."

36. By email dated July 27, 2016, counsel for ECI circulated revised settlement

documents that included the two "minor tweaks" that were proposed by ECI.

37. By email dated August 1, 2016, counsel for Cornerstone circulated six

settlement documents indicating that they were believed to be the final set for execution. The

settlement documents included a: (i) settlement agreement; (ii) motion to approve the settlement

8

agreement; (iii) stipulation to dismiss the Adversary Proceeding; (iv) Praecipe to dissolve the

attachment; (v) Praecipe to mark judgment satisfied; and (vi) Praecipe to mark the garnishee

judgment against Cornerstone satisfied.  A true and correct copy of the August 1, 2016 email is

attached hereto, made a part hereof, and marked as Exhibit "F."

       38.  By email dated August 3, 2016, counsel for ECI circulated revised settlement

documents requesting a minor modification to the settlement agreement and a clarifying change

that the Praecipe to indicate that the garnishment judgment against Santander Bank relating to

the Garnished Funds was being satisfied.  A true and correct copy of the August 3, 2016 email is

attached hereto, made a part hereof, and marked as Exhibit "G."

       39.  By email dated August 9, 2016, counsel for Cornerstone indicated that ECI's

proposed revisions outlined in the August 3, 2016 email were acceptable.  A true and correct

copy of the August 9, 2016 email is attached hereto, made a part hereof, and marked as

Exhibit "H."

       40.  By email dated August 9, 2016, counsel for ECI responded, in part:  "Thanks

John, I have reviewed and don't see any issues.  Thank you for cleaning up.  I am awaiting client

review but should not be a problem."  A true and correct copy of the August 9, 2016 email is

attached hereto, made a part hereof, and marked as Exhibit "I."

       41.  Attached hereto as Exhibit "J" are the final settlement documents that were

agreed to by the parties.  ECI never executed the settlement documents.

       42.  Several weeks after the settlement documents were circulated, on August 30,

2016, a new attorney entered his appearance for ECI.  [D.I. 537].

### (i)  ECI's Violation Of The Automatic Stay and This Court's Order

03/27/2017 SL1 1456780v1 110237.00001

43. As the Court will recall, the funds owed under the State Litigation Settlement Agreement were the subject of a contested matter litigated between ECI and the Debtor.

44. Indeed, prior to the conversion of this case, on April 29, 2014, the Debtor filed a *Motion to Impose and Enforce Automatic Stay and for Sanctions Against ECI* (the "Stay Motion"). [D.I. 56].

45. The Stay Motion outlined the background facts relating to the State Litigation Settlement Agreement and ECI Judgment. The Stay Motion stated further:

> ECI continues to attempt to enforce the Writ of Execution, despite the Debtor's bankruptcy filing, in violation of the automatic stay imposed under 11 U.S.C. §362.
>
> Stay Motion, ¶ 11.

46. On September 9, 2014, this Court entered an Order granting the Stay Motion. [D.I. 142]. Significantly, the Order stated:

> It is hereby ORDERED that the automatic stay is in effect as to the Debtor's interest in the receivable owed to the Debtor and Anthony Campisi by Cornerstone Consulting Engineers & Architectural, Inc. ("Cornerstone Receivable").
>
> It is further ORDERED that ECI, LLC is prohibited from making any attempt to collect the Cornerstone Receivable from Debtor's share, if any, of said receivable.

47. Incredibly, despite the fact that this Court expressly ordered ECI to refrain from any efforts to enforce the ECI Judgment against Cornerstone, ECI filed a writ of execution seeking to garnish Cornerstone's bank account at Santander Bank and restricted funds in that account up to $227,265.70 on October 24, 2016. A true and correct copy of the Writ of Execution is attached hereto as Exhibit "K."

48. ECI's efforts were unconscionable for a number of reasons. First, this Court entered the Stay Order expressly stating that ECI was prohibited from taking such action.

10

Second, ECI's actions violated the automatic stay.  Third, the funds that ECI sought to garnish,

and the judgment that ECI sought to satisfy, were the very subject of the Adversary Proceeding.

Lastly, the parties had negotiated a settlement relating to those funds.  ECI attempted an end run

around the Adversary Proceeding and settlement through the garnishment process.

       49.  By letter dated October 31, 2016, co-counsel for Cornerstone advised ECI

that:  (i) it had violated the automatic stay and the Stay Order; and (ii) forced Cornerstone to

incur significant expense and aggravation in responding to the writ.  Cornerstone continues to

reserve all rights and remedies relating to the illegal garnishment including, without limitation,

any and all claims arising under section 362(k) of the Bankruptcy Code.  A true and correct copy

of the October 31, 2016 letter is attached hereto, made a part hereof, and marked as Exhibit "L."

       50.  The next day, November 1, 2016, ECI filed a praecipe to dissolve the

attachment.  A true and correct copy of the Praecipe is attached hereto, made a part hereof, and

marked as Exhibit "M."

       51.  ECI was not chastened by either the Stay Order or the October 31st letter

admonishing ECI for the illegal execution.  Indeed, on March 22, 2017, the principal of ECI,

Dave Spause, emailed John Anderson of Cornerstone and again threatened to garnish

Cornerstone's account.  A true and correct copy of the March 22, 2017 email is attached hereto,

made a part hereof, and marked as Exhibit "N."

## RELIEF REQUESTED

       52.  By this Motion, Cornerstone respectfully requests the entry of the Order, in

the form attached hereto:  (i) enforcing the terms of the Settlement Agreement against ECI;

(ii) approving the terms of the Settlement Agreement as a compromise settlement under

Bankruptcy Rule 9019; (iii) entering a permanent injunction under section 105(a) of the

03/27/2017 SL1 1456780v1 110237.00001

Bankruptcy Code enjoining the assertion of any and all claims or causes of action against

Cornerstone or its shareholders, officers, directors, employees or representatives; and

(iv) allowing the Cornerstone Claim as a general unsecured claim.

53.  The Settlement Agreement provides for the payment of $100,000 to the

Trustee in full satisfaction of any and all obligations under the State Litigation Settlement

Agreement and Garnishment Judgment and authorizes ECI to retain the Garnished Funds.

## BASIS FOR RELIEF REQUESTED

### E.    The Settlement Agreement is Binding Upon ECI and the Trustee

54.  The Settlement Agreement is binding on ECI and the Trustee pending

approval by this Court.[2]

55.  It is well settled that this Court has the authority to enforce valid settlement

agreements.  *Fox v. Consolidated Rail Corp.*, 739 F. 2d 929, 932 (3d Cir. 1984) ("a federal court

has the inherent power to enforce . . . settlements entered into in cases originally filed therein").

The Court's authority is rooted in the strong judicial policy favoring voluntary settlement

agreements.  *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010); *see also*

*Cottman Transmission Sys., Inc. v. Metro Distrib., Inc.*, CIV. A. 92-2131, 1993 WL 481555

(E.D. Pa. Nov. 19, 1993) ("[t]here is no question that the law favors settlement and it has often

been said that settlements are the best justice.").  A "prerequisite for a valid agreement is that the

parties mutually assent to the terms and conditions of the settlement at the time it was made."

*Mowrer v. Warner-Lambert Co.*, CIV. A. 98-2908, 2000 WL 974394, at * 5 (E.D. Pa. July 14,

2000).

---

[2] Upon information and belief, the Trustee is amenable to the enforcement of the Settlement Agreement as
evidenced by the email communications referenced in the factual background of this Motion.

56.    Of particular importance to the instant matter, where the parties agree to all material terms of an agreement, including the payment of a definite amount, the agreement is binding on the parties.  *McDonnell v. Engine*, 314 Fed. Appx. 509, 512 (3d Cir. 2009); *see also Trout v. Milton S. Hershey Medical Center*, 572 F. Supp. 2d 591, 597 (M.D. Pa. 2008) ("a court will give effect to the unambiguous material terms of a settlement agreement to which the contracting parties have manifested assent").

57.    As the Third Circuit stated in *Green v. John H. Lewis & Co.*, 436 F. 2d 389, 390 (3d Cir. 1970), "[a]n agreement to settle a law suit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing."  *See also Main Line Theatres, Inc. v. Paramount Film Distributing Corporation*, 298 F.2d 801, 803 (3d Cir. 1962) (holding that even where there was no formal offer or acceptance of an oral settlement, and the settlement was conditioned on further action by one of the parties, a binding settlement contract had nonetheless been reached when the parties agreed on a settlement amount).  *See also Anderson v. United States Postal Serv.*, No. CIV. A. 97-3112, 1998 WL 67542, at * 1 (E.D. Pa. Feb. 19, 1998) (enforcing settlement where plaintiff, after orally agreeing to terms of settlement, balked at signing release included in settlement document).

58.    Under federal and Pennsylvania law, it is presumed that an attorney has the express authority to enter into a settlement agreement on behalf of his or her client.  Federal courts determining the scope of an attorney's authority to make a settlement offer often apply state agency law.  *See Tiernan v. Devoe*, 923 F.2d 1024, 1032-33 (3d Cir. 1991).  Under Pennsylvania law, an attorney may enter into a binding settlement agreement with the express authority of his client.  *Id*. at 1033.  Furthermore, there is a rebuttable presumption that "a

13

settlement entered into by an attorney has been authorized by the client." *Garabedian v.*

*Allstates Engineering Co.*, 811 F.2d 802, 803 (3d Cir. 1987).

59.    The Third Circuit's decision in *McDonnell* is also instructive.  In *McDonnell*,

the parties orally agreed to a settlement, pursuant to which the defendant was to pay a specified

amount to the plaintiff.  When the agreement was reduced to writing, a dispute arose as to

whether additional terms should be included in the agreement and, therefore, the defendant

argued that it was not bound by the earlier agreement because the parties had not agreed on all

material terms.  The district court disagreed, holding that, regardless of the parties' inability to

agree on the additional terms, the parties were bound by the oral agreement they had reached

regarding monetary payments because there was no ambiguity regarding the amount the

defendant was to pay the plaintiff.  Accordingly, the district court granted the plaintiff's motion

to enforce the settlement agreement.

60.    On appeal, the Third Circuit affirmed, holding that "whatever other

expectations the parties may have harbored, they agreed to be bound by [this] term[], and no

essential terms were excluded."  314 Fed. Appx. at 512.  The Court added, "This case is

distinguishable from those in which, for example, the parties agreed in principle to a monetary

settlement but left the amount unspecified.  In those circumstances, an essential term might well

be missing."  *Id*. at 512, n. 3.

61.    A party to a valid settlement agreement cannot avoid enforcement merely

because the party's position concerning the process has changed as appears to be the case herein.

As the courts in this judicial district have recognized, "[a] settlement agreement is still binding,

even if it is clear that a party had a change of heart between the time he agreed to the terms of the

settlement and when those terms were reduced to writing." *McCune v. First Judicial District of*

14

*Pennsylvania Probation Dep't*., 99 F. Supp. 2d 565, 566 (E.D. Pa. 2000) (citing *Gross v. Penn*

*Mutual Life Insurance Co.,* 396 F. Supp. 373, 375 (E.D. Pa. 1975)).  Likewise, "[a] party to a

settlement agreement cannot avoid the agreement simply by arguing that [she] did not foresee the

consequences of a particular term."  *Mowrer v. Warner-Lambert Co*., CIV. A. 98-2908,

2000 WL 974394, at * 6 (E.D. Pa. July 14, 2000) (citing *American Health Sys., Inc. v. Liberty*

*Health Sys.,* No. CIV. A. 90-3112, 1993 WL 49000, at * 5 (E.D. Pa. Feb. 22, 1993).

62.   Here, the email communications clearly evidence that the parties agreed to

the material terms of the settlement including, without limitation, payment of $100,000 in full

satisfaction of all claims against Cornerstone.  Further, Cornerstone agreed to relinquish the

Garnished Funds to ECI.  Thus, under Third Circuit precedent, there is no question that all

parties agreed to the essential terms and no material term was excluded.

### F.    The Settlement Agreement Fulfills the Requirements of Bankruptcy Rule 9019

63.   The proposed terms of the settlement satisfy the requirements of Rule 9019 of

the Bankruptcy Rules and approval of the Settlement Agreement is in the best interests of the

bankruptcy estate.

64.   Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the

trustee and after notice and a hearing, the court may approve a compromise or settlement."

65.   The decision of whether to approve a particular compromise lies within the

discretion of the bankruptcy judge and Bankruptcy Rule 9019(a).  *In re Texaco, Inc.*,

84 B.R. 893, 901 (Bankr. S.D.N.Y. 1988) (citing *In re AWECO*, 725 F.2d 293, 297 (5th Cir.

1983), *cert. denied*, 469 U.S. 880 (1984)).  Here, the proposed Settlement Agreement meets the

requirements of Bankruptcy Rule 9019.

15

66.  Settlements and compromises are "a normal part of the process of reorganization."  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co*., 308 U.S. 106, 130 (1939)).  Indeed, "[t]o minimize litigation and expedite the administration of a bankruptcy estate, [c]ompromises are favored in bankruptcy.'"  *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting *Collier on Bankruptcy* ¶ 9019.03[1] (15th ed. 1993)).

67.  When considering a proposed settlement, the bankruptcy court is required to make an "informed and independent judgment" as to whether the settlement is "fair and equitable," based on an:

> educated estimate of the complexity, expense, and likely duration of . . . litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.

*Protective Committee v. Anderson*, 390 U.S., 414, 424 (1968); accord *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 287 (Bankr. S.D.N.Y. 1990).

68.  In determining whether to approve a proposed settlement, a bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness."  *In re W.T. Grant Co*., 699 F.2d 599, 608 (2d Cir. 1983) (internal quotations omitted); *see also In re Penn Central Transp. Co*., 596 F.2d 1102, 1114 (3d Cir. 1979); *In re Key3Media Group, Inc.*, 336 B.R. 87, 92-93 (Bankr. D. Del. 2005) (court is not required to determine that settlement is best possible compromise).

69.  Finally, a court must determine that the proposed settlement is in the best interest of the debtor's estate.  *See In re Martin*, 91 F.3d at 394; *In re Marvel Entertainment*

16

Case 14-12458-jkf    Doc 558    Filed 03/27/17    Entered 03/27/17 13:32:21    Desc Main
Document      Page 17 of 21

*Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) ("[T]he ultimate inquiry [is] whether the

compromise is fair, reasonable, and in the interest of the estate . . . ").  To reach this

determination, the court must assess the value of the claims that are being settled against the

value to the estate of the approval of the settlement, bearing in mind that the "law favors

compromise."  *Magill v. Springfield Marine Bank* (*In re Heissinger Resources Ltd*.),

67 B.R. 378, 383 (C.D. III. 1986); *see also Martin*, 91 F.3d at 393; *Port O'Call Inv. Co. v. Blair*

(*In re Blair*), 538 F.2d 849, 851 (9th Cir. 1976).

70.    The standard by which courts should evaluate the reasonableness of a

proposed compromise and settlement is well-established.  This standard includes consideration

of the following four factors:  "(1) the probability of success in litigation; (2) the likely

difficulties in collection; (3) the complexity of the litigation involved, and the expense,

inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."

*Martin*, 91 F.3d at 393.

71.    Consideration of the *Martin* standards compels approval of the Settlement

Agreement because the proposed settlement is fair and equitable, will resolve the Adversary

Proceeding and avoid the need for future complex, costly and protracted litigation.  In the

interest in bringing finality to these proceedings, the settlement is in the best interests of the

estate and its creditors.

72.    The compromise settlement to be effected by the Settlement Agreement is

fair, reasonable, and in the best interests of the estate and its creditors.  The proposed

compromise settlement is well within the range of likely outcomes of the parties' disputes and

the settlement reflects an appropriate balance of the costs, risks and potential rewards of any

disputes with respect to allocation of the proceeds of the State Litigation Settlement Agreement.

17

03/27/2017 SL1 1456780v1 110237.00001

73.  Further, application of the *Martin* factors supports approval of the settlement. Indeed, given the competing claims to the remaining payments due under the State Litigation Settlement Agreement, the projected litigation expenses associated with litigating the Adversary Proceeding to a final adjudication, and need to immediately liquidate funds for distribution, there is no question that the proposed settlement is fair and equitable and in the best interests of the estate.

74.  Accordingly, Cornerstone respectfully requests that, pursuant to Bankruptcy Rule 9019(a), this Court approve the Settlement Agreement and authorize and direct the Trustee and ECI to consummate the Settlement Agreement.

**G.    Pursuant to Section 105 of the Bankruptcy Code, the Equities Weigh in Favor of Approving the Terms of the Settlement Agreement and Issuance of a Permanent Injunction in Favor of Cornerstone and its Shareholders, Officers and Directors**

75.  The relief sought by this Motion is also an appropriate exercise this Court's equitable powers under section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  *See* 11 U.S.C. § 105(a).

76.  As one court acknowledged, section 105 of the Bankruptcy Code confers broad powers on bankruptcy courts:

> [Section] 105 [is] an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case.  The basic purpose of [section] 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of its jurisdiction

*Davis v. Davis* (*In re Davis*), 170 F.3d 475, 492 (5th Cir. 1999) (internal citations and quotations omitted).

18

77.    Under section 105(a) of the Bankruptcy Code, this Court has expansive

equitable power to fashion any order or decree that is in the interest of preserving or protecting

the value of a debtor's assets.  *See Coie v. Sadkin* (*In re Sadkin*), 36 F.3d 473, 478 (5th Cir.

1994).  Here, the equities weigh in favor of approving the Settlement Agreement and issuing a

permanent injunction.

### H.    The Court Should Issue a Permanent Injunction under Section 105(a)

78.    A bankruptcy court may, in approving a settlement between a trustee and a

third party, enjoin claims against the settling party and channel those claims through the

bankruptcy estate.  *In re Mrs. Weinberg's Kosher Foods, Inc.*, 278 B.R. 358, 363 (S.D.N.Y.

2002); In re *Dow Corning*, 198 B.R. 214, 245 (Bankr. E.D. Mich. 1996)(an injunction barring

creditors from suing the purchaser of estate assets is "necessary and appropriate to give the 'free

and clear' aspect of § 363 meaning."); *Johns-Manville Corp*., 837 F.2d 89, 93 (2d Cir.

1988)(affirming bankruptcy court's authority "to approve the settlements and to channel claims

to the proceeds of the settlement.").  Appropriate circumstances for issuance of a supplemental

injunction exist where it is essential to a workable liquidation of a debtor's estate.  *See*

*Mrs. Weinberg's Kosher Foods*, 278 B.R. at 365 (approving a supplemental injunction in a

Chapter 7 bankruptcy case); *In re Madoff*, 848 F. Supp. 2d 469,486 (S.D.N.Y 2012) (issuance of

injunction to enjoin third party actions necessary to trustee's ability to settle claims).

79.    A permanent injunction is necessary and appropriate here to protect the

integrity of the compromise settlement.  It is also essential to a workable liquidation of this

bankruptcy estate.

80.    The issuance of an injunction is the only way to provide Cornerstone and its

principals with the finality and protection that are the bedrock of any settlement.  Individuals

19

who are not a party to the Adversary Proceeding have alleged that they are entitled to the

proceeds of the State Litigation Settlement Agreement.  Further, ECI's actions in this case

demonstrate that Cornerstone is at risk of further unwarranted collection efforts if an injunction

is not issued.

81.   Absent an the issuance of a permanent injunction against such individuals

and/or entities, Cornerstone and its principals would face the very real  threat that they would be

subjected to claims after the settlement payments are made to the Trustee pursuant to the

Settlement Agreement.  To eliminate this threat, consummation of the Settlement Agreement is

conditioned upon the issuance of an Order enjoining the assertion of any claims or causes of

action against Cornerstone, its shareholders, officers, directors, employees and representatives.

82.   Accordingly, this Court should exercise its authority under section 105 of the

Bankruptcy Code and issue the supplemental injunction providing that all persons allegedly

holding any interests in the State Litigation Settlement Agreement are permanently enjoined

from asserting any such interests against Cornerstone and its shareholders, officers, directors,

employees and representatives and that any person asserting any such interest shall look solely to

the estate for any recovery thereon.

83.   The permanent injunctive relief requested is authorized, appropriate and

would be in the best interests of the estate and its creditors.

84.   Contemporaneously with the filing of this Motion, Cornerstone is serving

Notice of Motion, Response Deadline and Hearing Date upon all creditors and parties in interest.

WHEREFORE, Cornerstone respectfully requests that this Court enter an Order

granting this Motion and:

(i)  Enforcing the terms of the settlement against ECI and the Trustee;

20

Case 14-12458-jkf   Doc 558   Filed 03/27/17   Entered 03/27/17 13:32:21   Desc Main
                    Document      Page 21 of 21

(ii)  Overruling any objections to the Settlement Motion;

(iii)  Ordering and directing ECI and the Trustee to execute and deliver to counsel for Cornerstone the settlement documents that are attached to this Motion;

(iv)  Approving the terms of the settlement pursuant to Federal Rule of Bankruptcy Procedure 9019;

(v)  Issuing a permanent injunction under section 105 of the Bankruptcy Code enjoining any and all claims and/or causes of action against Cornerstone, its officers, directors, shareholders, employees and representatives;

(vi)  Allowing Cornerstone's claim as a general unsecured claim in the amount of $15,899.40 pursuant to the terms of the settlement;

(vii)  Awarding Cornerstone the attorneys' fees and costs upon further application to the Court;

(viii)  Releasing the Garnished Funds to ECI;

(ix)  Granting Cornerstone such other and further relief as this Court deems necessary and just.

Dated:  March 27, 2017                    STEVENS & LEE, P.C.

                                          By: */s/ John C. Kilgannon*
                                              John C. Kilgannon, Esquire
                                              1818 Market Street, 29th Floor
                                              Philadelphia, PA  19103
                                              Telephone:  (215) 751-1943
                                              jck@stevenslee.com

                                          *Attorney for Cornerstone Consulting Engineers & Architectural, Inc.*

03/27/2017 SL1 1456780v1 110237.00001