**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE | : | Chapter 7 |
| | : | |
| CAMPISI CONSTRUCTION, INC. | : | |
| | : | Bankruptcy No. 14-12458-AMC |
| DEBTOR | : | |

**ORDER**

AND NOW, this 21st day of November 2024, upon consideration of the "Motion for Reconsideration" ("Reconsideration Motion") filed by Anthony G. Campisi ("Mr. Campisi"), and the response filed by ECI, LLC ("ECI") in opposition ("Response"), the Court hereby finds as follows:

1. On July 15, 2011, ECI filed a complaint in the Montgomery County Court of Common Pleas ("State Court") against Campisi Construction Inc. ("Debtor" collectively with Mr. Campisi, the "Campisi Parties") and Mr. Campisi for breach of contract and debt collection ("State Action"). Case No. 14-12458 ECF 655 State Court Order ¶ 2.

2. The parties participated in arbitration proceedings in the State Action, which resulted in an arbitration award in favor of ECI and against the Campisi Parties in the amount of $174,047.35, inclusive of interest ("Arbitration Award"). *Id.* at ¶ 3.

3. On August 13, 2013, the State Court confirmed the Arbitration Award and issued a judgment against the Campisi Parties, jointly and severally, in the amount of $174,047.35 as of May 31, 2013 plus $52.71/day in interest through the date of the entry of judgment ("State Action Judgment"). *Id.* at ¶ 5.

4. On March 31, 2014, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Case No. 14-12458 ECF 1. On May 27, 2014, ECI filed proof of claim #7 ("POC 7") based upon the State Action Judgment.

5. On June 24, 2015, the Court entered an order converting the Debtor's case to a case under Chapter 7 of the Bankruptcy Code. Case No. 14-12458 ECF 398. The next day, Terry P. Dershaw ("Mr. Dershaw") was appointed Chapter 7 trustee for the bankruptcy estate of the Debtor. *Id.* at ECF 399.

6. On January 12, 2016, Mr. Dershaw filed a motion to approve settlement ("Motion to Approve") between the Chapter 7 trustee, ECI, and another creditor, Cougar Development Group, LLC. *Id.* at ECF 473. Pursuant to the settlement agreement ("Settlement"), ECI and Mr. Dershaw, on behalf of the bankruptcy estate, agreed that ECI would, *inter alia*, share certain proceeds which ECI had levied prepetition in connection with collecting on the State Action Judgment with the bankruptcy estate in exchange for Mr. Dershaw ceasing certain litigation and withdrawing any and all objections to ECI's claims in the bankruptcy. *See id.* at Ex. A Settlement ¶ 8. Pursuant to ¶ 8(m) of the Settlement, "[a]ny and all monies or funds recovered, received by or paid in to the Estate shall not reduce or otherwise be credited to any of ECI's or Cougar's claims and shall not reduce the amount due and owing in those claims." *Id.*

7. On March 16, 2016, the Court entered an order granting the Motion to Approve. Case No. 14-12458 ECF 511. On January 29, 2019, the Chapter 7 trustee filed his final report and account ("Final Account") reflecting, *inter alia*, that the Chapter 7 trustee had received $219,039.71 into the estate, consisting of $101,039.71 from "Lukoil Funds"; $110,000 from "Cornerstone Funds"; and $8,000 from settlement of a preference action

2

against American Express. *Id.* at ECF 634. *See also id.* at ECF 473 Ex. A Settlement ¶ 8. The Final Account shows that the estate paid $143,123.83 to ECI on account of POC 7 in the "allowed" amount of $143,123.83 for Claim 7. *Id.* at ECF 634. On June 7, 2019, the Court entered an order approving the Chapter 7 trustee's final account, discharging the trustee, and closing the case. *Id.* at ECF 653.

8. On October 4, 2023, an order from the State Court dated the same day was entered on the bankruptcy case docket ("State Court Order"). *Id.* at ECF 655. The State Court Order explained that "[t]he parties agree that ECI received a monetary award pursuant to the Bankruptcy Court [Settlement]; the amount of the award being $143,123.83"; that subsequent to the approval of the Settlement in the bankruptcy, ECI filed a motion to compel in State Court requesting Debtor and Mr. Campisi satisfy the State Action Judgment; and that in response, the Campisi Parties filed a motion for credit asking the State Court to reduce the amount of the State Action Judgment by the amount paid to ECI pursuant to the Settlement. *Id.* at 655 State Court Order ¶¶ 11, 14, 15. As such, the State Court Order directed that "this matter shall be transferred to the United States Bankruptcy Court for the Eastern District of Pennsylvania to determine whether the $143,123.83 paid to [ECI] pursuant to a Bankruptcy Court [Settlement] shall be credited to [Debtor] against the [State Action Judgment] owed in the instant matter." *Id.* at 1.

9. On October 13, 2023, the Court entered a notice reassigning the case to the calendar of then-Chief Judge Coleman, as the former presiding bankruptcy judge, Judge Fitzsimon, had since retired. Case No. 14-12458 ECF 656.

10. On April 30, 2024, ECI filed a motion to reopen the Debtor's Chapter 7 case in light of the State Court Order. *Id.* at ECF 660.

3

11. Subsequently, on May 1, 2024, the Court entered a notice reassigning the case to the undersigned in preparation for then-Chief Judge Coleman's upcoming retirement. *Id.* at ECF 661.

12. On June 7, 2024, the Court entered an order reopening the case. *Id.* at ECF 671. The same day, ECI filed a "motion for remand" ("Remand Motion") arguing that "[b]ecause the Settlement Agreement's terms are straightforward, the Court must determine that Campisi Construction must not receive credit toward the [State Action Judgment] for money it paid to ECI under the [Settlement]." *Id.* at ECF 668 Mot. for Remand ¶ 13.

13. On June 13, 2024, Mr. Campisi filed his pro se response to the Remand Motion, essentially taking issue with ECI's underlying State Action Judgment and other issues unrelated to the State Court's directive. *Id.* at ECF 673 Resp. ¶ 3.

14. On July 18, 2024, the Court entered an order directing the United States Trustee to reinstate and re-appoint Mr. Dershaw as the Chapter 7 trustee to assist with resolving the dispute over the Settlement since he was the party who entered into the Settlement with ECI on behalf of the bankruptcy estate. *Id.* at ECF 678. Unfortunately, Mr. Dershaw subsequently filed a notice with the Court rejecting the appointment. *Id.* at ECF 681.

15. On August 14, 2024, the Court held a hearing on the Remand Motion where it explained that in order to determine how the amount ECI received pursuant to the Settlement should be credited, it appeared that the Court needed to understand the source or sources of funds that ECI had received, as the Settlement directed different treatment of different sources of funding.[1] As such, the Court directed each party to submit calculations

---

[1] For example, the Settlement provided that with respect to certain funds referred to in the Settlement as "Cornerstone Funds," ECI would receive 75% of the funds, and all funds collected "for interest, cost, expenses or attorney's fees" were to be kept by ECI and not credited to the State Action Judgment, with the Chapter 7 trustee receiving 25% for the estate. Case No. 14-12458 ECF 473 Ex. A Settlement ¶ 8(b)(i). Similarly, the Settlement

4

breaking down how much of the amount ECI received stemmed from each applicable source of funding referenced in the Settlement.

16. On August 28, 2024, ECI filed its supplemental memorandum, which the Court was confused to find largely restated ECI's previous argument and did not include any calculations or accounting of the sources from which ECI received funds from the Settlement. *See* Case No. 14-12458 ECF 687. Mr. Campisi filed a pro se response on September 16, 2024, which also did not include or reference any calculations or accounting of the funds ECI received. *Id.* at ECF 689. ECI filed a reply on October 1, 2024, largely restating its prior arguments. *Id.* at ECF 690.

17. On October 2, 2024, the Court held the continued hearing on the Remand Motion. *Id.* at ECF 692. It became apparent through the Court's colloquy with counsel for ECI that he had not understood the Court's directive at the last hearing, nor the Court's reason for continuing to ask about the sources of funding. Fortunately, ECI's principal supplied very helpful background which cleared up the Court's confusion regarding the Settlement. ECI's principal explained that after the Settlement had been approved, ECI released the levies it had secured prepetition against certain property[2] to the Chapter 7 trustee, Mr. Dershaw. Mr. Dershaw then calculated and distributed $143,123.83 from those funds to

---

provided with respect to funds referred to in the Settlement as "Lukoil Funds" that ECI would get 60% of any recovery and the Chapter 7 trustee would receive 40% of the recovery for the estate. *Id.* at ¶ 8(d). Additionally, funds recovered by ECI "as a result of a Levy or Garnishment Violation" were to be "credited towards the secured judgment amount once costs, expenses and reasonable attorney's fees are deducted for the collection and adjudication of said funds," and after the satisfaction of the State Action Judgment, the remainder would go to the estate in an amount not to exceed the amount recovered from Lukoil. *Id.* at ¶ 8(g). Finally, recovery from any other known or unknown actions would be shared equally between ECI and the estate up to the amount of ECI's State Action Judgment. *Id.* at ¶ 8(k).

[2] Namely in "Cornerstone Funds" and "Lukoil Funds." *See* Case No. 14-12458 ECF 473 Ex. A Settlement ¶ 8(b)(i), (d).

5

ECI's counsel based on how the source of funds was to be treated pursuant to the Settlement.

18. Accordingly, on October 7, 2024, the Court entered an order ("Remand Order") finding that the $143,123.83 at issue in this dispute first was released, along with all the other proceeds upon which ECI had placed a prepetition levy, directly to the Chapter 7 trustee into the bankruptcy estate; the Chapter 7 trustee then paid ECI the $143,123.83 from estate funds, which sum it appears had been calculated by the trustee based on the terms of the Settlement; and that ¶ 8(m) of the Settlement provides that "[a]ny and all monies or funds recovered, received by or paid in to the Estate shall not reduce or otherwise be credited to any of ECI's…claims and shall not reduce the amount due and owing in those claims." *Id.* at 694. Based on the foregoing, the Remand Order declared that "the $143,123.83 the Chapter 7 trustee paid ECI was paid from the estate and as such, per the plain language of the Settlement, is not to be credited towards the State Action Judgment." *Id.*

19. On October 15, 2024, Mr. Campisi filed the Reconsideration Motion arguing that the Remand Order conflicts with the Chapter 7 trustee's Final Account. *Id.* at ECF 700. On November 11, 2024, ECI filed the Response. *Id.* at ECF 706.

20. The Reconsideration Motion does not identify which legal authority permits the Court to reconsider and vacate the Remand Order. However,

> [a] motion to reconsider is generally considered under Fed. R. Civ. P. 59(e) or Fed. R. Civ. P. 60(b) (made applicable by Fed. R. Bankr. P. 9023 and 9024 respectively). When a reconsideration motion is filed within fourteen (14) days of the judgment, it may be treated as a motion to alter or amend a judgment under

6

> Fed. R. Civ. P. 59(e).[3] Otherwise, a reconsideration motion may be treated as being one seeking relief pursuant to Fed. R. Civ. P. 60(b).
>
> *Chaney v. Grigg (In re Grigg),* Bankr. No. 11–71206–JAD, Adv. No. 12–7008–JAD, 2013 WL 5310207, at *1 (Bankr. W.D. Pa. 2013).

Because the Reconsideration Motion was filed within fourteen (14) days of the Remand Order, the Court will first consider whether relief is warranted under Fed. R. Civ. P. 59(e) ("Rule 59"). Under Rule 59(e), the moving party must demonstrate an intervening change in controlling law, the availability of new evidence that was not available prior to entry of judgment, or the need to correct a clear error of law or fact or prevent manifest injustice in order to satisfy its burden. *United States Tr. v. Harms (In re Harms),* 612 B.R. 288, 294 (Bankr. W.D. Pa. 2020). The movant bears a high burden to demonstrate that grounds exist justifying this extraordinary remedy. *In re Sellers*, 555 B.R. 479, 481-82 (Bankr. E.D. Pa. 2016).

21. First, the Reconsideration Motion does not identify any intervening change in controlling law which would impact the outcome of this matter. Second, the Reconsideration Motion does not offer any explanation regarding why the Chapter 7 trustee's Final Account, which was publicly filed in January 2019, would not have been available prior to the multiple hearings that the Court held on the Remand Motion in 2024.

22. To demonstrate a clear error of law or fact the movant must show that the court overlooked a factual or legal issue which may have altered the previous disposition, "such as when dispositive factual matters or controlling decisions of law were brought to the court's attention, but not considered." *Einhorn v. Kaleck Bros., Inc.*, 713 F. Supp. 2d

---

[3] Federal Rule of Bankruptcy Procedure 9023 provides that Federal Rule of Civil Procedure 59 applies in cases under the Bankruptcy Code and that "[a] motion for a new trial or to alter or amend a judgment shall be filed…no later than 14 days after entry of judgment."

417, 426 (D. N.J. 2010). The Reconsideration Motion does not satisfy this standard, particularly given that the Final Account confirms the Court's conclusion that the levied funds from Lukoil and Cornerstone were released directly to the Chapter 7 trustee into the estate who then distributed the appropriate amount to ECI. *See* Case No. 14-19066 ECF 151 Mot. for Recon. Ex. A, Ex. 1 to Final Account, Ex. 3 to Final Account. The Final Account shows that the Court was correct in its determination that the distribution from the Chapter 7 trustee would not be credited toward the State Action Judgment based on ¶ 8(m) of the Settlement providing that "[a]ny and all monies or funds recovered, received by or paid in to the Estate shall not reduce or otherwise be credited to any of ECI's…claims and shall not reduce the amount due and owing in those claims." The $143,123.83 was in fact paid to ECI from the Debtor's bankruptcy estate, making clear that ¶ 8(m) of the Settlement applied to that payment. The Final Account provides no basis whatsoever for the Court to conclude otherwise.[4]

23. Finally, the Third Circuit Court of Appeals has noted there tends to be "substantial, if not complete, overlap" between the concepts of a "clear error of law or fact" and "manifest injustice." *In re Energy Future Holdings Corp.*, 904 F.3d 298, 311 (3d Cir. 2018). Courts may only grant reconsideration based on manifest injustice if the error is "apparent to the point of being indisputable" or if the record presented is "so patently unfair and tainted that the error is manifestly clear to all who view it." *Kahle v. Roemmele (In re Roemmele)*, 466 B.R. 706, 712 (Bankr. E.D. Pa. 2012). A movant's mere dissatisfaction with the outcome does not constitute manifest injustice. *Degussa v. Materia, Inc.*, 305 F.

---

[4] Mr. Campisi appears to place significance on the Final Account's description of the $143,123.83 payment to ECI as ECI's "allowed" claim, but this simply refers to the amount of ECI's claim that could be paid through the bankruptcy based on the liquid value of the assets in the estate. It has no implication for the enforceability of the Settlement or the applicability of the terms of the Settlement.

8

Supp. 3d 563, 575 (D. Del. 2018). As discussed, the Final Account only confirms the Court's conclusion in the Remand Order, as such, Mr. Campisi has not demonstrated any manifest injustice in that order.

24. Having concluded that Rule 59(e) does not justify relief, the Court now considers whether Rule 60(b) would warrant granting the relief requested.[5]

25. Rule 60(b) provides that:

on motion and just terms, the court may relieve a party…from a final judgment, order, or proceeding for

>   (1) mistake, inadvertence, surprise, or excusable neglect;
>   (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>   (3) fraud…misrepresentation, or misconduct by an opposing party;
>   (4) the judgment is void;
>   (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>   (6) any other reason that justifies relief.

26. "The remedy provided by Rule 60(b) is extraordinary and special circumstances must justify granting relief under it." *In re Express Car & Truck Rental, Inc.,* 455 B.R. 434, 439 (Bankr. E.D. Pa. 2011). "Rule 60(b) is not read liberally to give a disappointed party an opportunity to relitigate his or her case [or]…present facts that were otherwise available at the time of judgment." *Id.*

27. To the extent that Mr. Campisi is attempting to argue that Rule 60(b)(1) justifies relief, the Court disagrees. Relief is generally only warranted under Rule 60(b)(1) where a party made an excusable litigation mistake or the judge made a substantive mistake of law or fact in the order. *Estate of Sisk v. Manzanares,* 270 F. Supp. 2d 1265, 1282 (D. Kan.

---

[5] Federal Rule of Bankruptcy Procedure 9024 provides that Federal Rule of Civil Procedure 60 applies in cases under the Bankruptcy Code.

2003). Here, as discussed in connection with Rule 59(e), the Final Account only further confirms what the Court concluded in the Remand Order, and as such, the Reconsideration Motion shows no mistake, precluding relief under Rule 60(b)(1).

28. With respect to Rule 60(b)(2), the term "newly discovered evidence" refers to "evidence of facts in existence at the time of trial of which the aggrieved party was excusably ignorant." *Bohus v. Beloff,* 950 F.2d 919, 930 (3d Cir. 1991). This provision only entitles an aggrieved party to relief when the newly discovered evidence is "(1) material and not merely cumulative, (2) could not have been discovered prior to trial through the exercise of reasonable diligence, and (3) would probably have changed the outcome…" *Singleton v. Beadle,* 839 Fed. Appx. 671, 674 (3d Cir. 2021); *Bohus,* 950 F.2d at 930.

29. Here, Mr. Campisi offers no explanation regarding why the Final Account, which had been filed publicly on the docket in 2019, could not have been discovered through reasonable diligence in time for the multiple hearings conducted on this matter in 2024. Additionally, the Final Account would not have changed the outcome because it demonstrates that the Cornerstone and Lukoil levied funds were released directly into the bankruptcy estate and then paid by the Chapter 7 trustee to ECI. Accordingly, ¶ 8(m) of the Settlement providing that "[a]ny and all monies or funds recovered, received by or paid in to the Estate shall not reduce or otherwise be credited to any of ECI's…claims and shall not reduce the amount due and owing in those claims," was applicable to the funds as the Court concluded in the Remand Order. Therefore, Rule 60(b)(2) cannot justify relief.

30. The only other potentially applicable basis for reconsidering the Remand Order might be Rule 60(b)(6). To be entitled to relief under Rule 60(b)(6), a litigant must demonstrate

10

"extraordinary circumstances," where without such relief, an extreme and unexpected hardship would occur. *In re Nortell Networks,* 664 Fed. Appx. 157, 159 (3d Cir. 2016); *In re Express Car & Truck Rental, Inc.,* 455 B.R. 434, 441 (Bankr. E.D. Pa. 2011). This rule "is not read liberally to give a disappointed party an opportunity to relitigate his or her case, revisit issues the court has already considered in its judgment, advance new arguments, or present facts that were otherwise available at the time of judgment." *In re Express Car & Truck Rental Inc.*, 455 B.R. at 439.

31. Rule 60(b)(6) does not help Mr. Campisi because he cannot demonstrate extraordinary circumstances where the Final Account supports the Court's conclusion in the Remand Order that the Settlement precludes the amount received by ECI from the bankruptcy estate being credited to the State Action Judgment.

32. Based on the foregoing, it is hereby ORDERED that the Reconsideration Motion is DENIED.

  Honorable Ashely M. Chan
  United States Bankruptcy Judge

cc: Anthony G. Campisi

11